**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KENNETH D. COLE,

Plaintiff,

vs. CASE NO. 3:06-cv-1065-J-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

Defendant.

---

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record. For the reasons set out herein, **the Commissioner's decision is REVERSED and REMANDED**.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

## I. Procedural History

On September 5, 2003, Plaintiff filed an application for SSI and DIB (Tr. 317-18, 87-89), alleging disability from July 13, 2003, due to multiple impairments, including degenerative disc disease, cubital tunnel syndrome, herniated cervical nucleus pulposus, carpal tunnel syndrome, muscle spasms, asthma, and hernia (Tr. 103).

Plaintiff's claims were denied at the initial and reconsideration levels. Administrative Law Judge ("ALJ") James R. Russell conducted a hearing on February 8, 2006 (Tr. 327-63). The ALJ found Plaintiff not disabled by opinion dated May 18, 2006 (Tr. 24-32). The Appeals Council denied Plaintiff's request for review on September 7, 2006 (Tr. 6-9), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210.[2] Plaintiff now seeks the Court's review of the ALJ's unfavorable decision pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3) (Doc. #1).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation

[2] Unless otherwise specified, all references to 20 C.F.R. will be to the 2007 edition.

process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v); *Crayton v. Callahan*, 120 F. 3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual

findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. §§ 404.704, 416.912(c).

**III. Background Facts**

Plaintiff was born on December 9, 1957 (Tr. 333). Plaintiff has a ninth grade education and twenty eight years of past relevant work experience as a truck driver (Tr. 114, 333-34). On March 9, 2001, Plaintiff, while working as a truck driver, was injured when a 150 pound lumber pack fell, slammed his left elbow against the side of a truck and, ultimately, crushed his left hand (Tr. 156). Immediately after the accident, Plaintiff experienced pain and marked numbness from his left elbow down to his fingers on his left

hand (Tr. 156). On May 3, 2001, Plaintiff presented to John Hawkins, III, M.D. ("Dr. Hawkins"), who noted Plaintiff suffered from "left ulnar nerve lesion at elbow" and neck pain (Tr. 157-58).[3]

Between May 2001 and January 2002, Plaintiff sought treatment for his left arm numbness/pain from Garry Kitay, M.D. ("Dr. Kitay") (Tr. 160-70). Dr. Kitay noted that nerve conduction reports from July 2002 confirmed the presence of moderate cubital tunnel syndrome and mild to moderate carpal tunnel syndrome (Tr. 164-65). Dr. Kitay performed a left cubital tunnel release on November 28, 2001 (Tr. 167). On January 3, 2002 (five weeks following Plaintiff's left cubital tunnel release surgery), Plaintiff reported marked improvement of his left arm numbness/pain; however, he still complained of neck pain (Tr. 168).[4] On January 10, 2002, Dr. Kitay released Plaintiff from his care, stating Plaintiff had reached maximum medical improvement ("MMI") (related to his arm injury) and that he could return to usual work duty; however, Dr. Kitay further stated that Plaintiff "remains limited due to his neck pain" (Tr. 169). Dr. Kitay then referred Plaintiff back to Dr. Chapa and Dr. Hawkins for his neck pain (Tr. 169-70).[5]

From May 2002 through July 2002, Plaintiff sought treatment from Calvin Hudson, M.D. ("Dr. Hudson") for continued left arm pain and neck pain (Tr. 208-09). Dr. Hudson read the results of an MRI taken of Plaintiff's cervical spine on May 23, 2002, and stated

---

[3] Plaintiff was referred to Dr. Hawkins by Robert W. Chapa, M.D. ("Dr. Chapa") after an April 24, 2001 cervical spine magnetic resonance imagining ("MRI") showed a C5-6 central disc "protrusion/herniation" (Tr. 156, 190).

[4] Throughout his treatment with Dr. Kitay, Plaintiff complained of neck pain (Tr. 160, 163, 168, 169).

[5] The Court notes that it does not appear from the record that Plaintiff ever returned to the care of Dr. Chapa or Dr. Hawkins.

the MRI confirmed Plaintiff suffered from a ruptured disc at C5-6, which Dr. Hudson noted "could certainly be causing his [Plaintiff's] neck and left arm pain" (Tr. 204).

On November 13, 2003, at the request of the Commissioner, Plaintiff underwent a consultative examination by Kirk Mauro, M.D. ("Dr. Mauro") (Tr. 210-11). Dr. Mauro noted that Plaintiff presented with a cane and that Plaintiff rated his daily pain level as an eight on a scale of one to ten, with ten representing the most pain (Tr. 210-11). Dr. Mauro observed the presence of a left ulnar nerve injury and complaints of neck pain (Tr. 211). Dr. Mauro agreed with Dr. Kitay's opinion that Plaintiff had reached MMI concerning his work related injury (*i.e.* left arm injury) and that Plaintiff could return to "light duty type activity" (Tr. 211).

From October 2003 through March 2004, Plaintiff sought treatment from Eugene Charbonneau, M.D. ("Dr. Charbonneau") for a variety of ailments that included lower back and neck pain (Tr. 236-46). On March 22, 2004, Dr. Charbonneau provided an assessment of Plaintiff's ability to perform sedentary work activity (Tr. 246). Dr. Charbonneau indicated that Plaintiff required a hand-held assistive device for even occasional standing and walking and would not be expected to attend any employment situation for eight hours per day, five days per week (Tr. 246). Dr. Charbonneau commented that Plaintiff experienced significant lower back and neck pain, which affected his concentration, and that Plaintiff was unable to sustain the activity and attention required in a competitive work place (Tr. 246).

On February 13, 2004, a state agency medical consultant, Mary Elizabeth Seay, M.D. ("Dr. Seay") filled out a physical residual functional capacity ("RFC") assessment,

wherein she stated Plaintiff retained the RFC for light work.[6] Dr. Seay, however, noted that Plaintiff's C5-6 symptoms were attributable to a medically determinable impairment and that, in her opinion, Plaintiff's symptoms were "generally credible" (Tr. 230, 227).

On October 28, 2004, Plaintiff presented to a clinic of the Florida Department of Health with complaints of shortness of breath and pain in his back and shoulder (Tr. 300-01). Plaintiff was diagnosed with chronic bronchitis and lower back pain (Tr. 300-01). On January 10, 2005, a physician at a Florida Department of Health clinic referred Plaintiff to vocational rehabilitation and indicated that Plaintiff required a cane for ambulation (Tr. 294-95).[7]

On June 20, 2005, Plaintiff further sought treatment from Thomas C. Washburn, M.D. ("Dr. Washburn") at a Florida Department of Health clinic for ongoing chronic pain (Tr. 273). Plaintiff complained of numbness, tingling, and burning in his arms, and radiating neck pain (Tr. 274).

At the February 8, 2006 hearing, Plaintiff appeared and testified, and was represented by attorney Charles Romo ("Romo") (Tr. 327). Plaintiff stated that, in addition to his other ailments, he suffers from neck problems, numbness in his arms, and insomnia, and that his arms "go to sleep" and are numb every day (Tr. 335). Plaintiff additionally stated that he is unable to twist off a bottle cap or use a screwdriver and that he can lift a cup of coffee or one liter of soda, but nothing heavier (Tr. 335-36). Plaintiff maintained he

[6] According to Social Security Ruling 83-10, light work requires the ability to lift and carry twenty pounds occasionally and up to ten pounds frequently, sitting up to six hours of an eight-hour workday, and standing/walking six or more hours in an eight-hour workday. SSR 83-10, 1983 WL31251, at *5 (S.S.A. Nov. 30, 1982).

[7] The Court notes that, although Plaintiff obtained a cane, apparently without a prescription, this is the second doctor who stated Plaintiff requires a cane (*see* Tr. 246, 294-95).

can only sit for twenty minutes before his legs go numb and his feet swell (Tr. 336).

Plaintiff testified that he must prop up his feet for about four to five hours daily to alleviate his back pain (Tr. 336). Plaintiff further stated that he can only walk only 80 to 100 feet due to lower back pain, numbness in his legs, and swelling in his feet (Tr. 337). Plaintiff stated he has constant muscle spasms, weakness, loss of finger manipulation, loss of memory and dizziness (caused by his medications), and that he has problems staying focused on a television program (Tr. 338-40).

Vocational Expert ("VE") Mark Capps testified that Plaintiff's past work as a truck driver is classified as medium to very heavy work, as defined by the *Dictionary of Occupational Titles* ("DOT") (Tr. 354). *See e.g.* 1 United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 904.383-010, 905.663-014, 905.663-010, 906.683-022 (4th Ed. 1991). The ALJ asked the VE to identify jobs that could be performed by a hypothetical plaintiff with a RFC for a restricted range of light work (Tr. 355). The ALJ stated the hypothetical claimant could never climb ropes, ladders, or scaffolds, must avoid concentrated exposure to open electrical, dangerous moving machinery, or unprotected heights (Tr. 355-56). The ALJ further stated the hypothetical claimant must avoid concentrated exposure to pulmonary irritants and cannot engage in constant same motion function with his hands (Tr. 356).

The VE responded that the hypothetical individual, as described by the ALJ, would not be able to perform Plaintiff's past work (Tr. 356). The VE, however, stated the hypothetical individual could perform the following other jobs available within the national and local economy: (1) office helper; (2) mailroom clerk; and (3) surveillance system monitor (Tr. 357). *See* 1 United States Dep't of Labor, *Dictionary of Occupational Titles* §§

239.567-010, 209.687-026, 379.367-010.

The ALJ then asked the VE to consider the same hypothetical individual and added that the individual must have the opportunity to perform the job sitting or standing at will (Tr. 358). The VE responded that such an individual would not be able to perform the jobs of office helper or mailroom clerk, but could still work as a surveillance system monitor (Tr. 358-59). The ALJ asked the VE to consider the same hypothetical individual and added that a cane is necessary for ambulation (Tr. 359). The VE replied that the use of a cane would preclude work as a office helper or mailroom clerk, but not work as a surveillance system monitor (Tr. 359).

Plaintiff's attorney, Romo, asked the VE if the hypothetical individual could still perform the aforementioned jobs if he is unable to tilt his neck up and down repeatedly, to which the VE responded that a surveillance system monitor must move more than his eyes to look at the screens and that an individual who is unable to repeatedly move his neck would likely have marked levels of concentration impairment (Tr. 360-61). Romo next asked the VE to consider the vocational implications of medication side effects such as lightheadedness and dizziness upon the surveillance system monitor position (Tr. 362). The VE answered that, if the lightheadedness and dizziness resulted in more than a moderate impairment, then even unskilled work would be eliminated (Tr. 362).

Finally, Romo asked the VE to consider the vocational implications of a moderate to marked problem remembering and understanding written materials (Tr. 362). The VE replied that moderate to marked limitations in this area would adversely affect, but possibly not preclude, work as a surveillance system monitor (Tr. 362). After Romo's examination of the VE, the ALJ did not ask the VE any additional questions.

On June 28, 2006, one of Plaintiff's treating physicians, Dr. Washburn, wrote a letter (presumably to the Social Security Administration) regarding Plaintiff (Tr. 14). Dr. Washburn stated that Plaintiff requires treatment for, among other conditions: degenerative disk disease of the neck and lumbar spine, bilateral carpal tunnel syndrome, asthma, and chronic bronchitis (Tr. 14). In Dr. Washburn's opinion, Plaintiff is permanently and totally disabled, and has been for over three and a half years (Tr. 14).[8]

## IV. Analysis

Without addressing all of Plaintiff's arguments, the Court finds the ALJ's decision was not reached in accordance with the Regulations and the law of this circuit, and is not supported by substantial evidence. For the following reasons, the ALJ's decision is reversed and remanded.

Specifically, the ALJ, in the findings of fact and conclusions of law portion of his decision, found Plaintiff suffered from the following severe impairments: "cervical spine degenerative disc disease and lumbar spine degenerative disc disease, history of left cubital tunnel syndrome, history of carpal tunnel syndrome, chronic obstructive pulmonary disease ("COPD"), hypertension, and hyperlipidemia" (Tr. 26, Finding 3). Additionally, the ALJ stated:

> The evidence establishes that the claimant [Plaintiff] has degenerative changes in his cervical spine and lumbar spine. He has a history of neck and low back pain and has been prescribed narcotics [sic.] pain relievers, anti-inflammatory drugs and analgesics to help control his symptoms. *However, the evidence does not support a finding that his impairments are of a severity that would cause the pain and limitations alleged*. A cervical spine magnetic

[8] The Court notes that, even though Dr. Washburn's letter is dated after Plaintiff's February 8, 2006 hearing, Dr. Washburn's letter is part of the record; however, the ALJ did not mention Dr. Washburn's letter or Dr. Washburn's opinion concerning Plaintiff's impairments in his decision.

> resonance imaging of May 2002 confirmed the presence of degenerative disc disease, disc bulge and disc protrusion *but no evidence of disc herniation* or canal stenosis. . . .

(Tr. 28) (*emphasis added*).

The ALJ, however, also made the following statement in his decision: "Dr. Hudson requested cervical and lumbar magnetic resonance imaging scans [May 23, 2002 MRI] which he noted *confirmed the presence of a ruptured disc at C5-6* which could be responsible for the claimant's [Plaintiff] neck and left arm pain" (Tr. 27 (*emphasis added*); *see also* Tr. 204)).

The word "rupture" is defined by *Steadman's Medical Dictionary* as follows: "rupture [L. *ruptura* a fracture (of limb or vein), fr. *rumpo*, pp. *rupyus*, to break]. 1. Hernia. 2. A solution of continuity or a tear; a break of any organ or other of the soft parts." *Steadman's Medical Dictionary*, 1374 (William R. Hensyl et al. eds., Williams & Wilkins 25th ed. 1990) (1911).

Accordingly, the Court finds the ALJ's formal findings of fact are contradicted by his other statements in the decision and the medical evidence of record (which shows Plaintiff suffers from a herniated/ruptured disc at C5-6 that could be responsible for his neck and left arm pain). Even the state agency medical consultant, Dr. Seay, stated that Plaintiff's "disc protrusion at C5-6" could reasonably lead to the type of neck and arm pain Plaintiff claims he experiences and that his "symptoms are generally credible" (Tr. 228-30).

Since the ALJ failed to recognize Plaintiff suffers from a herniated/ruptured cervical disc at C5-6, it is unclear whether he contemplated this impairment when he determined Plaintiff's residual functional capacity. The term "residual functional capacity" is defined by the Regulations as the most an individual can still do after considering the effects of

physical and/or mental limitations that affect the ability to perform work-related activities. 20 C.F.R. §§ 404.1545, 416.945. In making an RFC assessment, ALJ must consider all evidence in the case record. 20 C.F.R. §§ 404.1545, 416.945. The ALJ must also consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1529, 416.929.

Here, the Court is unable to determine whether the ALJ considered Plaintiff's ruptured cervical disc at C5-6 when he assessed Plaintiff's RFC (*see* Tr. 28, Finding 5). Although the ALJ stated, "[w]hen considering the mild to moderate findings on cervical and lumbar magnetic resonance imaging scans, the claimant would have difficulty with extremes of movement and heavy exertion," the Court cannot find the ALJ contemplated Plaintiff's ruptured/herniated cervical disc at C5-6 when he referenced "mild to moderate [MRI] findings" (*see* Tr. 30).

For the aforementioned reasons, the Court finds the ALJ failed to consider or properly distinguish material record evidence in making Plaintiff's RFC assessment; thus, the Court finds the ALJ did not apply the proper legal standards in denying Plaintiff's disability claim. Accordingly, the decision of the Commissioner shall be reversed and remanded for additional proceedings consistent with this Order and Opinion.

## V. Conclusion

For the foregoing reasons, the Court finds the decision of the Commissioner is neither supported by substantial evidence, nor decided according to proper legal standards. Accordingly, the Commissioner's decision is hereby **REVERSED and REMANDED**

pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

Upon remand, the Commissioner shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law. The additional proceedings, should include, but are not limited to: assessment of the severity of all of Plaintiff's medically determinable impairments and, in light thereof, re-assessment of Plaintiff's RFC; consideration of the opinions of Plaintiff's examining and treating medical sources (including Dr. Washburn's opinion); consideration of the opinions of non-examining medical sources; re-evaluation of Plaintiff's subjective complaints of pain; and, if warranted, additional vocational expert testimony.

Furthermore, the ALJ shall accord proper weight to the testimony and statements of Plaintiff's treating physicians in accordance with the law of this circuit. *See Lewis v. Callahan,* 125 F.3d 1426, 1440-41 (11th Cir. 1997)*; Sharfarz v. Bowen*, 825 F.2d 278, 279-81 (11th Cir. 1987). If the ALJ finds reason to disregard the opinion of a treating or examining physician, he must provide specific reasons for doing so, and these reasons must be supported by substantial evidence in the record.

## VI. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Opinion and, thereafter, to close the file. The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filled within fourteen (14) days of the Commissioner's final decision to award benefits. *See* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a); *Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida this 24th day of March, 2008.

Thomas E. Morris
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record
and *pro se* parties, if any